UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

HIGH FIVE THREADS, INC.,

    Plaintiff,

v.

MICHIGAN FARM BUREAU, et al.,

    Defendants.
_____/

Case No. 1:20-cv-604

Hon. Hala Y. Jarbou

## OPINION

This an action for trademark and copyright infringement. Before the Court is Defendants' motion to dismiss for failure to state a claim. For the reasons herein, the Court will grant the motion.

### I. BACKGROUND

Plaintiff High Five Threads, Inc. is a Michigan retailer that sells apparel and "novelty items," including "t-shirts, sweatshirts, hats, keychains, can cozies, stickers, mugs and pins[.]" (Compl. ¶ 9, ECF No. 1.) It possesses trademark rights and a copyright registration containing a simple line drawing of two hands juxtaposed to one another at a right angle, with the pinky of one hand folded and the index finger on that hand overlapping the middle finger:



(Compl. ¶ 21.)

Some Michiganders would recognize that drawing as a representation of the State of Michigan. The hands and fingers are positioned to resemble the shape of Michigan's upper and lower peninsulas:



https://dlpng.com/png/6333160.

Indeed, the similarity between the shape of the lower peninsula and the shape of a close-fingered hand (or mitten) is so widely recognized that it is common for residents of the lower peninsula to use their own hands as rough maps to indicate where they live. For instance, someone from Lansing might hold out their right hand with fingers extended and then point to the center of their palm, whereas someone from Charlevoix might point to the inside tip of their ring finger. Similarly, residents often refer to a portion of the state north of Detroit as the "thumb region" because it corresponds to what looks like the thumb of a hand. Accordingly, the Court will refer to High Five's two-hand design as the "Hand Map."

Some have suggested that Michigan's two peninsulas resemble two hands giving a "high five" greeting. That suggestion apparently inspired the name of High Five's business. One version of High Five's design includes the Hand Map surrounded by High Five's name and a reference to Michigan:



(Compl. ¶ 13).  The latter version is a registered trademark.  High Five alleges that it has used the Hand Map as a trademark and as an "ornamental design" on its products since 2011.  (*Id.* ¶ 12.)

According to the complaint, High Five launched a campaign in March 2020 to "give back" to businesses and individuals financially impacted by the Governor of Michigan's stay-at-home orders during the COVID-19 pandemic.  (*Id.* ¶ 16.)  It committed to donating its net proceeds from the sale of "special t-shirts designed to specifically promote the strength of the Northern Michigan economy."  (*Id.* ¶ 17.)

Defendants Michigan Farm Bureau, MFB, Inc., and Michigan Farm Bureau Financial Corporation (collectively, "MFB") sell insurance and insurance services.  In April 2020, MFB launched a similar campaign focused on restaurants impacted by the stay-at-home orders.  As part of that campaign, it used the following design in its promotional materials:


.

(Compl. ¶ 19.)  It also used the following designs in "sticker product packaging" and stickers, respectively:

, .

(*Id.* ¶ 26.)

High Five contends that the two hands in MFB's designs infringe its copyright and trademark rights in the Hand Map. High Five asserts claims for trademark and copyright infringement under federal law, as well as claims for trademark infringement, misappropriation, unfair competition, and deceptive trade practices under state law.

MFB moves to dismiss the complaint for failure to state a claim.

## II. STANDARD

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* (quoting Fed. R. Civ. P. 8(a)(2)).

Assessment of the complaint must ordinarily be undertaken without resort to matters outside the pleadings; otherwise, the motion must be treated as one for summary judgment under Rule 56. *Wysocki v. Int'l Bus. Mach. Corp.*, 607 F.3d 1102, 1104 (6th Cir. 2010). "However, a court may consider exhibits attached to the complaint, public records, items appearing in the record

of the case, and exhibits attached to defendant's motion to dismiss, so long as they are referred to in the complaint and are central to the claims contained therein, without converting the motion to one for summary judgment." *Gavitt v. Born*, 835 F.3d 623, 640 (6th Cir. 2016).

Here, MFB has attached many exhibits to its motion. MFB argues that the Court can take judicial notice of the content of these exhibits whereas High Five disagrees. The Court need not resolve that issue, however, because the Court can grant MFB's motion without considering the exhibits attached to it.

### III. ANALYSIS

#### A. Copyright Infringement

"To state a claim for copyright infringement, a plaintiff is required to plead: (1) ownership of a valid copyright; and (2) copying by the defendant." *Halper v. Sony/ATV Music Publ'g, LLC*, No. 18-5915, 2019 WL 994524, at *2 (6th Cir. Feb. 15, 2019) (citing *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991)). "Not all 'copying' is actionable, however: it is a constitutional requirement that a plaintiff bringing an infringement claim must prove 'copying of constituent elements of the work *that are original*.'" *Kohus v. Mariol*, 328 F.3d 848, 853 (6th Cir. 2003) (quoting *Feist*, 499 U.S. at 361 (emphasis added)).

MFB argues that the Hand Map is not original enough to be protected by copyright. "Copyright protection subsists . . . in *original* work of authorship fixed in any tangible medium of expression[.]" 17 U.S.C. § 102(a). Originality requires "'at least some minimal degree of creativity.'" *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 387 F.3d 522, 534 (6th Cir. 2004) (quoting *Feist*, 499 U.S. at 345-46). This standard is "not a demanding one." *Id.* Even a "'slight amount'" of creativity will suffice. *Id.* (quoting *Feist*, 499 U.S. at 345). But "[t]he mere fact that a work is copyrighted does not mean that every element of the work may be protected." *Feist*, 499 U.S. at 348.

5

Copyright protection does not extend to "any idea, procedure, process, system, method of operation, concept, principle, or discovery, regardless of the form in which it is described, explained, illustrated, or embodied in such a work." 17 U.S.C. § 102(b). In addition, as to "pictorial" and "graphic" works like those at issue here, the Copyright Act does not afford the owner of a work "that portrays a useful article as such, any greater or lesser rights with respect to the making, distribution, or display of the useful article so portrayed than those afforded to such works under the law . . . in effect on December 31, 1977." *Id.* § 113(b). Determining whether the portions of the work copied were entitled to copyright protection is a question of law. *Lexmark Int'l*, 387 F.3d at 534.

The boundary line "between idea and expression, between process and non-functional expression" is an "elusive" one. *Id.* at 535. Courts have relied on the doctrines of "merger and scenes a faire" to ascertain this line. Under the merger doctrine, "[w]here the 'expression is essential to the statement of the idea,' or where there is only one way or very few ways of expressing the idea, the idea and expression are said to have 'merged.'" *Id.* (quoting *CCC Info. Servs., Inc. v. Maclean Hunter Mkt. Reports, Inc.*, 44 F.3d 61, 68 (2d Cir. 1994) (citations omitted)). "In these instances, copyright protection does not exist because granting protection to the expressive component of the work necessarily would extend protection to the work's uncopyrightable ideas as well." *Id.* "'[I]deas, first expressed by nature, are the common heritage of humankind, and no artist may use copyright law to prevent others from depicting them.'" *Enchant Christmas Light Maze & Mkt. Ltd. v. Glowco, LLC*, 958 F.3d 532, 537-38 (6th Cir. 2020) (quoting *Satava v. Lowry*, 323 F.3d 805, 813 (9th Cir. 2003)).

Under the scenes a faire doctrine, practical realities and other "'external factors constrain the choice of expressive vehicle,' thereby precluding protection." *Automated Sols. Corp. v.*

6

*Paragon Data Sys., Inc.*, 756 F.3d 504, 519 (6th Cir. 2014) (quoting *Lexmark Int'l*, 387 F.3d at 535). Thus, "expressions that are standard, stock, or common to a particular subject matter or medium are not protectible under copyright law." *Enchant*, 958 F.3d at 537 (quoting *Satava*, 323 F.3d at 810). "In trying to discern whether these doctrines apply, courts tend to 'focus on whether the idea is capable of various modes of expression.' The question, however, is not whether any alternatives theoretically exist; it is whether other options practically exist under the circumstances." *Lexmark Int'l*, 387 F.3d at 536 (quoting *Mason v. Montgomery Data, Inc.*, 967 F.2d 135, 138 (5th Cir. 1992)).

The allegedly infringing works at issue here contain a basic line drawing of two hands. High Five does not possess copyright protection over a simple outline of a human hand. There is nothing original in such a drawing; it is the most basic representation of something from nature, familiar to every child who has ever traced her own hand. Does the juxtaposition of two such drawings at a right angle, as in the Hand Map, result in copyright-protectible expression? If it does, the protection for that expression is "thin" at best, "comprising no more than . . . original contribution to ideas already in the public domain." *Satava v. Lowry*, 323 F.3d 805, 812 (9th Cir. 2003). Two close-fingered hands arranged perpendicular to one another as a representation of Michigan is simply a generic expression of the "popular idea of using ones' hands to indicate the shape of Michigan." (*See* Pl.'s Resp. 24, ECF No. 17.) High Five did not invent this idea (*see id.* at 25) and copyright does not protect it. At most, copyright protects original contributions to, or expressions of, that idea.

To be sure, High Five's Hand Map is not devoid of protected expression. For instance, the folded pinky and overlapping index finger are arguably protected elements. But those elements are not present in MFB's design; thus, MFB did not copy them. Moreover, to the extent High Five

7

possesses "thin" copyright protection over the outline of two hands in the hand map configuration, High Five does not state a claim because it must show "virtually identical copying" of its protected rights. *See Satava*, 323 F.3d at 812. The differences between the Hand Map and MFB's designs—including the different colors used by MFB, the unique shape and positioning of the thumbs and fingers in High Five's design,[1] and the shorter fingers in MFB's design—show that any copying was *not* virtually identical. Accordingly, High Five does not state a claim for copyright infringement. It does not allege facts to plausibly show that MFB copied protected elements of its copyrighted design.

### B. Trademark Infringement and Unfair Competition (Lanham Act)

High Five asserts two separate claims under the Lanham Act. Its first claim relies on 15 U.S.C. § 1125(a)(1)(A), which prohibits the use in commerce of any word or symbol, or any "false designation of origin," in a manner that is

> likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person.

15 U.S.C. § 1125(a)(1)(A). This is a claim for "unfair competition." *See Dassault Systèmes, SA v. Childress*, 828 F. App'x 229, 234 (6th Cir. 2020).

The second claim relies on 15 U.S.C. § 1114(1), which prohibits the use of a "colorable imitation" of a registered trademark "in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive[.]" 15 U.S.C. § 1114(1)(a). This is a claim for trademark infringement. *See Dassault Systèmes*, 828 F. App'x at 234.

---

[1] In addition to three-dimensional elements of the upper hand not found in MFB's design (the thumb crease, the folded pinky, the overlapping index finger), the thumb of the lower hand on High Five's Hand Map is more prominent than the one in MFB's design, more faithfully depicting Saginaw Bay and the thumb region of the lower peninsula.

8

Both claims require a showing that MFB's conduct created "a likelihood of confusion regarding the origin of goods or services offered by the respective parties." *Progressive Distrib. Servs., Inc. v. United Parcel Serv., Inc.*, 856 F.3d 416, 424 (6th Cir. 2017); *accord Audi AG v. D'Amato*, 469 F.3d 534, 542 (6th Cir. 2006) ("Under the Lanham Act . . . we use the same test to decide whether there has been trademark infringement, unfair competition, or false designation of origin:  the likelihood of confusion between the two marks."). A claim for trademark infringement under the Lanham Act also requires ownership of a registered trademark. *See Kassa v. Detroit Metro Convention & Visitors Bureau*, 672 F. App'x 575, 576 (6th Cir. 2017) (citing *Hensley Mfg. v. ProPride, Inc.*, 579 F.3d 603, 609 (6th Cir. 2009)).

The Hand Map surrounded by High Five's business name and the words "Made in Michigan" is a registered trademark while the Hand Map alone is allegedly an unregistered mark. MFB argues that the facts alleged do not support a likelihood of confusion. A court must weigh the following factors when evaluating a likelihood of confusion:

> (1) strength of the senior mark; (2) relatedness of the goods or services; (3) similarity of the marks; (4) evidence of actual confusion; (5) marketing channels used; (6) likely degree of purchaser care; (7) the intent of defendant in selecting the mark; and (8) likelihood of expansion of the product lines.

*Hensley Mfg.*, 579 F.3d at 610 (citing *Daddy's Junky Music Stores, Inc. v. Big Daddy's Family Music Ctr.*, 109 F.3d 275, 280 (6th Cir. 1997)). "The ultimate question [is] whether relevant consumers are likely to believe that the products or services offered by the parties are affiliated in some way." *Homeowners Grp., Inc. v. Home Mktg. Specialists, Inc.*, 931 F.2d 1100, 1107 (6th Cir. 1991). Although this question is fact-intensive, courts will dismiss claims at the pleading stage where the allegations are not adequate to infer a likelihood of confusion. *See, e.g.*, *Hensley Mfg.*, 579 F.3d at 610-11 (finding that a complaint failed to allege facts sufficient to show that the

9

defendant's "use of the 'Hensley' name creates a likelihood of confusion as to the source of its products").

High Five's complaint contains few allegations suggesting a likelihood of confusion. High Five relies primarily on its contention that MFB's designs are "substantially similar" to High Five's trademark such that MFB's use of its designs is "likely to cause confusion" among customers. (Compl. ¶¶ 28-29.) High Five also contends, in conclusory fashion, that MFB's designs have "caused actual confusion" and are likely to cause further confusion by "suggesting that Defendants' goods and services are authorized by, sponsored by, approved by, or affiliated with" High Five. (*Id.* ¶ 65.) And High Five contends that MFB has "profited" from this customer confusion by "deceiving" customers and "diverting" them from High Five to MFB. (*Id.* ¶ 66.)

A brief examination of some of the relevant factors demonstrates that High Five's allegations are not sufficient to state a claim for trademark infringement or unfair competition under the Lanham Act.

### 1. Strength of High Five's Marks

On its face, High Five's registered mark is a relatively strong one due to its distinctiveness. MFB relies upon evidence that other parties use similar hand designs, and that High Five's own uses of the Hand Map have been ornamental uses rather than trademark uses, suggesting that the Hand Map is a relatively weak mark in the marketplace. However, the Court will not rely on MFB's evidence for purposes of the motion to dismiss. Nevertheless, looking solely at the complaint, the apparent strength of High Five's mark is the only factor that weighs in favor of a likelihood of confusion.

### 2. Similarity of the Marks

Contrary to High Five's assertion, MFB's designs are not substantially similar to High Five's registered trademark or the unregistered Hand Map. The Court discussed many of the

10

differences between the Hand Map and MFB's designs in Section III.A above. The elements that are unique in the Hand Map, particularly the folded pinky and overlapping index finger, convey a distinct impression that differentiates it from MFB's drawing of two outstretched hands near one another. Indeed, only when the hands in MFB's design are isolated from the nearby text in MFB's promotional materials (as is the case for the blue hand stickers) do they convey the impression of a Michigan hand map. Otherwise, when placed next to the words "give back" and "together," the two hands simply give the impression of multiple individuals extending assistance to one another, which is a far cry from the impression conveyed by High Five's Hand Map.

In addition, none of MFB's uses contains anything like the circle of text surrounding the hands. That circle is a prominent and visually significant component of High Five's registered trademark.

Furthermore, in several of MFB's designs there is a logo—what appears to be a stylized version of "FB"—ostensibly referring to MFB. That logo diminishes the likelihood that a viewer will perceive the two hands as an identifier for High Five. *See AutoZone, Inc. v. Tandy Corp.*, 373 F.3d 786, 796 (6th Cir. 2004) ("The use of a challenged junior mark together with a house mark or house tradename can distinguish the challenged junior mark from the senior mark and make confusion less likely.").

In summary, High Five's primary basis for alleging a likelihood of confusion does not weigh in its favor.

### 3. Relatedness of the Goods and Services

Perhaps the least compelling factor from High Five's standpoint is the similarity (or lack thereof) between its products and those of MFB. High Five sells apparel and novelty items. MFB sells insurance. These products are "totally unrelated"; consequently, "confusion is unlikely." *Daddy's Junky Music Stores*, 109 F.3d at 282. "Services and goods 'are "related" . . . if the

11

services are marketed and consumed such that buyers are likely to believe that the services, similarly marked, come from the same source, or are somehow connected with or sponsored by a common company.'" *Id.* at 282-83 (quoting *Homeowners Grp.*, 931 F.2d at 1109). It is difficult to discern how or why a consumer could possibly think that MFB's insurance services were affiliated with High Five, let alone that such confusion would impact a purchasing decision. Indeed, High Five's trademark registration is for "[b]aby tops; [h]ooded sweatshirts; [and] [s]hort-sleeved or long-sleeved t-shirts." *See* Trademark Electronic Search System, Registration No. 4,287,877, available at https://tmsearch.uspto.gov/. That registration does not give High Five the right to exclude others from using similar marks in connection with completely different products.

High Five attempts to bridge the gap between its business and that of MFB by alleging that High Five sells stickers bearing its marks and that MFB distributed stickers bearing the allegedly infringing or confusingly similar designs. (*See* Compl. ¶ 26.) The fact remains, however, that MFB is not in the sticker business. High Five does not allege that MFB sold the stickers at issue.

### 4. Evidence of Actual Confusion

High Five alleges no facts to support its conclusory statements that MFB's hand designs caused actual customer confusion.

### 5. Degree of Customer Care

High Five alleges no facts regarding the degree of customer care involved in purchasing its products or those of MFB. Common sense indicates that consumers do not exercise the same degree of care when purchasing clothing and novelty items as they do when purchasing insurance.

### 6. Marketing Channels Used

The complaint contains only a few hints about the marketing channels used by High Five and MFB. Apparently, they both operate in Michigan. And like most businesses, they both maintain websites. However, High Five sells its products on its website; it does not allege the

same about MFB.  High Five also alleges that it and MFB both used social media to promote their philanthropic campaigns in Michigan, but there are no facts suggesting that the parties targeted the same audiences through this media.  High Five also operates a physical store in Traverse City, Michigan; it does not allege that MFB also operates physical locations.  In short, the allegations do not suggest much overlap in the marketing channels used by the parties.

### 7. Summary of Factors

In summary, the complaint contains very few facts from which to reasonably infer a likelihood of customer confusion.  Indeed, the facts alleged indicate that such confusion is very unlikely.  Only the distinctiveness of High Five's marks weighs in its favor.  But that distinctiveness cannot overcome the dissimilarities between its marks and the designs used by MFB, as well as the dissimilarities between the parties' goods and services.  Thus, High Five falls far short of stating a plausible claim under the Lanham Act.[2]

## IV. SUPPLEMENTAL JURISDICTION

The Court has concluded that High Five fails to state a claim under federal law. Consequently, the Court will dismiss those claims.  High Five's remaining claims are for trademark infringement, misappropriation, unfair competition, and deceptive trade practices under state law.  (*See* Compl., Third Claim for Relief, PageID.10.)  High Five also cites Mich. Comp. Laws § 429.41, alluding to a possible claim for fraudulent trademark registration under state law; however, it titles this claim as one for "copyright infringement" and there are no allegations supporting a claim of fraud.  (*See id.*, Fourth Claim for Relief, PageID.12.)

"Generally, once a federal court has dismissed a plaintiff's federal law claim, it should not reach state law claims." *Experimental Holdings, Inc. v. Farris*, 503 F.3d 514, 521 (6th Cir. 2007)

---

[2] The Court declines to consider MFB's alternative arguments that High Five should be estopped from its asserting trademark rights due to allegedly fraudulent representations about the registered status of the Hand Map.

(citing *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966)). "Residual jurisdiction should be exercised only in cases where the interests of judicial economy and the avoidance of multiplicity of litigation outweigh our concern over needlessly deciding state law issues." *Moon v. Harrison Piping Supply*, 465 F.3d 719, 728 (6th Cir. 2006).

Here, MFB asks for dismissal of the entire complaint without expressly examining each of High Five's possible claims under state law. At this stage of the proceedings, judicial economy does not warrant either (1) resolving High Five's state-law claims through MFB's motion to dismiss or (2) continuing the exercise of supplemental jurisdiction over those claims. Accordingly, the Court will decline to exercise supplemental jurisdiction over the claims arising under state law and dismiss them without prejudice.

## V. CONCLUSION

For the reasons stated, the Court will grant Defendants' motion to dismiss as set forth herein. The Court will dismiss High Five's claims arising under federal law for failure to state a claim. The Court will dismiss High Five's claims arising under state law because the Court declines to exercise supplemental jurisdiction over them.

An order and judgment will enter in accordance with this Opinion.


Dated: May 6, 2021 /s/ Hala Y. Jarbou
HALA Y. JARBOU
UNITED STATES DISTRICT JUDGE

14